UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JIMMY GREEN,

                Plaintiff,                Case No. 1:15-cv-914

v.                                            Honorable Janet T. Neff

UNKNOWN HAVERSTICK et al.,

                Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Cathleen Heffelbower and Unknown Parties ##1-5. The Court will serve the complaint against Defendants Haverstick and Young.

**Discussion**

    I.       Factual allegations

Plaintiff Jimmy Green presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF), though the actions about which he complains occurred while he was housed at the Michigan Training Unit (MTU). He sues the following MTU officials: Correctional Officers (COs) (unknown) Haverstick and Unknown Parties ##1-5; Inspector Young; and Grievance Coordinator Cathleen Heffelbower.

Plaintiff alleges that, on February 10, 2013, he informed Defendant Haverstick that he intended to write a grievance against him because Haverstick had forced Plaintiff off the phone at a time he was entitled to use it, had subjected him to abusive language, and had threatened to place Plaintiff in segregation. Haverstick responded to Plaintiff's statement that he intended to file a grievance by writing two false, retaliatory, major misconduct tickets against Plaintiff. A sergeant reviewed the tickets, and, after discussing the matter with Haverstick and his superiors, the misconduct tickets were withdrawn and the grievance was deemed successfully resolved.

Haverstick allowed a few months to pass, but he then began to harass, intimidate and threaten Green. Defendant Haverstick was subsequently moved to another unit, but he continued to harass Plaintiff whenever they crossed paths in such places as the dining hall and the school building. Haverstick told Plaintiff that he was "patient" and would "wait until the time is right to get you." (Compl., ECF No. 1, PageID #5.) Plaintiff alleges that it was well known that Haverstick favored white, racist prisoners. In his various threats, Haverstick told Green that he would have "my bros cut you up!" (*Id.* at 6.) Haverstick also told white prisoners that Plaintiff was a "snitch" every time an incident occurred involving white prisoners. (*Id.*) On March 15, 2014, a well known white

prisoner with whom Plaintiff had never had prior interaction, cut Plaintiff's face and ear, causing a wound that required twelve stitches.

At the time of the assault, Unknown Parties ##1-4 were in the officers' shed, off to the side of the walkway, listening to a basketball game on the radio. Usually at least two guards would be on the walkway, watching prisoners during mass movements. During this time period, according to an MTU shift commander, officers had been ordered to be on high alert during mass movements, because of the amount of violence, particularly the number of face cuttings, in MDOC prisons. Shortly before Plaintiff was attacked, one of the unknown COs, Unknown Party #1, pulled Plaintiff aside and warned him to "'watch your back,' because CO 'Haverstick is out to get you.'" (*Id.*) Plaintiff met with Inspector Young about multiple concerns: (1) pressing charges against the prisoner who assaulted him; (2) Haverstick's threats to have Plaintiff assaulted; and (3) the absence and inattention of the correctional officers on duty during the assault. Plaintiff also told Young that he planned to file suit against Defendants Haverstick and the unknown COs. Young replied that it was his job and duty to make sure that Plaintiff could not sue or press charges against "my officers." (*Id.* at 7.) Thereafter, Defendant Young allegedly retaliated and conspired to keep Plaintiff in segregation, where he could not use the phone, e-mail family, or call the state police to institute an investigation. Plaintiff contends that Defendant Young never even charged or ticketed the prisoner Young admitted he saw on the video, while the unknown COs were in the shed.

On March 21, 2014, Plaintiff completed a Step I grievance during the night shift, and he gave it to the CO on duty (Unknown Party #5), for delivery to the grievance coordinator. Unknown Party #5 opened the grievance, read it, and shook his head "no." Defendant Unknown Party #5 then asked Plaintiff what he intended to accomplish with his grievance. Plaintiff indicated

that he intended to sue.  Unknown Party #5 folded Plaintiff's grievance and walked off, shaking his head.  Plaintiff never received a grievance number for the grievance, and it was never filed, presumably because Unknown Party #5 never delivered the grievance to the grievance coordinator.

On April 1, 2014, Plaintiff was transferred to DRF, where he wrote to Defendant Heffelbower, the grievance coordinator for MTU, asking for a grievance identifier number for his March 21, 2014 grievance.  When he did not receive a response by April 14, 2014, Plaintiff sent another grievance to the MTU Inspector, asking for an internal investigation of the assault.  On April 18, 2014, Defendant Heffelbower rejected the grievance on the grounds of delay, without considering Plaintiff's purported valid reason for his delay, his transfer.

Plaintiff alleges that Heffelbower's conduct in rejecting his grievance violated MICH. DEP'T OF CORR., Policy Directive 03.02.130.  He contends that Defendant Haverstick violated the First Amendment by retaliating against Green for expressing his intent to file a grievance and violated the Eighth Amendment by encouraging or initiating the prisoner-assault on Plaintiff.  Further, he alleges that Defendant COs Unknown Parties ##1-4 failed to protect him when their absence and inattention to prisoner safety caused him to be sliced by another prisoner.  In addition, Plaintiff alleges that Defendant Young retaliated against him for threatening to file a grievance and a lawsuit by placing him in segregation, refusing to call the police, and refusing to ticket or charge the assaulting prisoner.  Plaintiff also argues that Defendant Unknown Party #5 retaliated against Plaintiff by not forwarding his grievance, thereby denying him an investigation and preventing him from exhausting his claims, in violation of the First Amendment.  Finally, Plaintiff contends that Defendant Heffelbower violated his right to access the courts by rejecting his grievance and preventing Plaintiff from exhausting his claims.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Defendants Unknown Parties ##1-4

Plaintiff alleges that Defendant Correctional Officers Unknown Parties ##1-4 failed to protect him from attack by another prisoner, in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*

*v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that an individual would cause a prisoner serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Helling*, 509 U.S. at 32-33.

In the instant case, Plaintiff alleges no more than that Unknown Parties ##1-4 were negligent in their duties, having gone inside the officers' shed to listen to a basketball game at a time they ordinarily would have been on duty in the area. Plaintiff does not indicate that Defendants were aware of a specific and serious risk to Plaintiff at the time he was injured, much less that the risk was substantial. Instead, Plaintiff's allegations sound in negligence. Plaintiff repeatedly states that these Defendants' injured him by "absence and inattention" (Compl., PageID ##7, 9), rather by intentional or knowing disregard of a substantial risk of serious harm to Plaintiff. As a consequence, Plaintiff's allegations against Defendants Unknown Parties ##1-4 fail to state a claim under the Eighth Amendment.

### B.     Unknown Party #5

Plaintiff alleges that Defendant Correctional Officer Unknown Party #5 neglected or refused to deliver Plaintiff's grievance to the grievance coordinator, thereby affecting Plaintiff's ability to exhaust the grievance process in anticipation of filing the instant lawsuit.

To the extent that Plaintiff intends to argue that Defendant Unknown Party #5 deprived him of his due process right to file a grievance, he fails to state a claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's conduct did not deprive him of due process.

To the extent that Plaintiff intends to claim that Defendant Unknown Party #5 interfered with his right to access the courts, he also fails to state a claim. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817.

The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Even if Defendant Unknown Party #5 interfered with Plaintiff's filing of a grievance, he cannot demonstrate actual injury. A prisoner's right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement of the PLRA only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a) (emphasis added). If Plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Unknown Party #5.

Finally, to the extent that Plaintiff alleges that Defendant Unknown Party #5 retaliated against him for filing a grievance by refusing to submit the grievance, he fails to state a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is beyond dispute that the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Nevertheless, the failure to submit a grievance is not sufficiently adverse to support a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). While 42 U.S.C. § 1997e(a) requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court, if a prisoner attempts to file a grievance and is unsuccessful, his remedy will be deemed unavailable. *See Kennedy v. Tallio*, 20 F. App'x 469, 470-71 (6th Cir. 2001) (placement on modified access and refusal to allow grievance cannot prevent prisoner from filing in federal court or cause the suit to be dismissed for lack of exhaustion); *see also Walker v. Mich. Dep' of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) (same). Consequently, the failure of Defendant Unknown Party #5 to submit Plaintiff's grievance could not deter a person of ordinary

firmness from continuing to engage in the protected conduct.  *Id.* at 471 (citing *Thaddeus-X*, 175 F.3d at 394).

#### C. Defendant Heffelbower

Plaintiff alleges that Defendant Heffelbower denied his grievance as untimely, without taking into account Plaintiff's transfer to another prison. Plaintiff contends that, under MICH. DEP'T OF CORR., Policy Directive 03.02.130, Heffelbower was required to consider the reasons for the late filing of the grievance and was precluded from penalizing Plaintiff for delay that was beyond his control.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

#### D. Conspiracy Claim against Defendants Unknown Parties ##1-5 & Heffelbower

In a single sweeping sentence, Plaintiff alleges that "Defendants' acts and omissions were done in a conspiracy to deny Green his constitutional and statutory rights in violation of 42 U.S.C. § 1983." (Compl., PageID #10.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681,

-13-

695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative. The allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving officers against whom Plaintiff has failed to state an individual constitutional claim. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them and Defendants Haverstick and Young. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various actions about which Plaintiff complains were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### E.     State-law Claims against Unknown Parties ##1-5 & Heffelbower

Plaintiff's suggests that Defendants Unknown Parties ##1-5 and Heffelbower violated state policies or tort law.  To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over state-law claims related to the dismissed Defendants, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id*.  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims against Defendants Unknown Parties ##1-5 and Heffelbower will be dismissed without prejudice.

### F.     Defendants Haverstick and Young

Upon review, the Court concludes that Plaintiff has adequately alleged facts to state retaliation and/or Eighth Amendment claims against Defendants Haverstick and Young.  The Court therefore will order service of the complaint on Defendants Haverstick and Young.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Unknown Parties ##1-5 and Heffelbower will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Haverstick and Young.

An Order consistent with this Opinion will be entered.


Dated: November 2, 2015           /s/ Janet T. Neff
                                  Janet T. Neff
                                  United States District Judge